Good morning, your honors. Frank Sproul is appearing for the petitioner. This case really has one single issue, which is that the immigration judge in an interim decision and the BAA found him to be a persecutor of others. This is a particularly Carthaginian finding because it rendered him ineligible not just for asylum, but for Nicarra, for which he was arguably eligible, and cancellation or removal for non-permanent residence, for which he was most assuredly eligible. There's really one or two undisputed facts, which is he never personally was present during these interrogations. He never personally harmed anyone. He was acting as a police officer. This stands in stark contrast to the central case, Miranda-Alvarado, where the petitioner was a translator in a prison. But didn't Miranda-Alvarado say that that was a more marginal case than one in which somebody arrested people? Right. In fact, Miranda specifically said this is on the margin of culpability, and he was translating. And if he had arrested the people and sent them off to be interrogated and executed, that would be more culpable, not less culpable. Right. Except, I mean, in that case, his culpability was also he was translating contemporaneous with electric shocks here. You aren't listening to me, but go ahead. Well, no. I mean, the – in this case, what we have – I mean, that contrasts with another case that's cited by the government, the Kumar case, 728 Fed 3rd 993. This person was essentially in the prison, and his duties were simply ministerial, you know, moving the prisoner from one place to another, and was not directly involved. This whole argument is completely different than what you made in your briefs, right? Because your argument in your brief was essentially that we should disregard entirely the notes from the asylum officer, and therefore, there was no evidence that he – I'd like to get to that, because the – that basically is the entire universe of evidence as to whether or not he's a persecutor. Seven tiny pages, 454 to 461, and it's extremely ambiguous. I mean, the questioner is always asking about opponents of the government. He would say, yes, people who killed people. Now, we have to understand that this was a brutal civil war, right? These opponents of the government were not peacefully demonstrating and singing we shall overcome. They were committing acts of terror and murder. So to some extent, it's not clear that in the record in terms of the notes of the asylum officer, is it on the account of? I mean, he says – you know, the officer says he's talking about crimes in jail, and then the interlocutor on page 457 says, no, I'm talking about politics. Well, the Petitioner wasn't. So, I mean, the only evidence we have is the somewhat ambiguous, attenuated notes of the asylum officer in which the Petitioner is saying, I arrested people. Some people were opponents of the government. Who killed people? I mean, he specifically says that. And then he said it's rather unclear that sometimes they were the guilty – you know, everyone went to trial except the ones who killed four or five people. Now, we're not sure what that really means, but is that really – he's saying they killed four or five Marxist insurgents who killed four or five people? I mean, that's the on account of nexus that I think is missing. So it's a very slender read to make this really ultimate finding. And, I mean, basically that's it. We're talking about the asylum officer's notes, and that's why I basically argued since it's not clear, you have basically the presumed scienter of the Vuk Marovitch case. Well, they did it, so he must have been – had the purposeful involvement and the purposeful assistance. I don't think it's present in this case. And I can basically – that's my argument. Scalia. But isn't there a concern that he was found not credible? Horwich. There's no question about that. I mean, I can't insult anybody's intelligence to say that he was less than credible. So all we really have is we have to take as true the asylum officer's notes, which I submit are not sufficient. Well, he said, for example, that he worked with intelligence and with this PM2 or whatever, which was an intelligence unit. He said that specifically. Right? I was a motorcycle cop and also worked with intelligence. Who did you work with in intelligence? PM2. What does that stand for? Let's see. Do you – and then he went on from there. So it does appear that particularly with the burden on him – you see, the problem is that the burden is on him once there's at least this much evidence. Right? And if he puts nothing on, nothing credible on, nothing credible on, then why isn't this enough, at least for the inference? Well, I guess my argument would be that I don't think that's quite – I don't think the nexus is found. I mean, he simply says the – you know, people who were – people would go to jail, people would go to trial, and then there's this murky business about the extrajudicial killings, which is – again, I don't think it's sufficient because of the nexus. He's not saying they, you know, committed extrajudicial killings against Marxist insurgents. It has to be on account of. So when we have, you know, not the greatest due process in the police departments of – I'm confused. What has to be on account of? Well, the persecutor of others has to be – there's a two-pronged test. You know, you have to commit the persecutory acts. You have to have purposeful involvement and purposeful assistance, but it has to be on account of. Right? I mean, it has to be on account of the enumerated grounds. And that's where I think is missing here, where he – I mean, he didn't rebut this, you know, murky allegation, but it really wasn't enough that it was also on the enumerated grounds. Is there any suggestion that people are just being picked up randomly? Not randomly, but, I mean, in the limited colloquy we have here, he's saying, I picked up people who committed crimes, who murdered people. They may have been opponents of the government. Again, this was not – you know, you can be an opponent of the government and also commit crimes. Right? Which is – I mean, he never said, I picked people up because I didn't like their speech. Right? He – you know, in the limited colloquy we have here, he picked up people who murdered, who committed actual crimes, which is, you know, very different from the other cases where it's clearly done on account of being a member of the Shining Path, being a member of the FMLN. Here, he was committing people who committed regular, ordinary crimes who may or may not have been members of the Marxist insurgency. So I don't think there's a nexus there. Yes, sir? Do you want to reserve the rest of your time? I'll reserve it, yes. Thank you. Thank you, Your Honor. Good morning. This is Dana Camilleri for the Attorney General. In this case, the record contains substantial evidence that Rodas Reyes was subject to the persecutor bar. Under oath before the asylum officer, he admitted that he arrested people based on their political opinion. Well, where did he say that? He said he arrested people who were against the government. But where did he say that he arrested people because they were against the government? If Your Honor. I believe the asylum officer, at several points, you know, tried to clarify with him, I'm still referring to political, when you arrested somebody, what happened to them, to make sure that he understood it was the political dissidents that he was interested in. I'm afraid that, let's see if we can get more specific, okay? Okay. On 456, he says, I'm still referring, because Rodas Reyes says it depends on the crimes they committed, and the asylum officer says, I'm still referring to political. Okay. When you arrested someone, what happened to them? Okay. And then he goes on to explain the investigations and that they were taken to a specialized unit where they were interrogated. But he says that, why was it secret? If some people killed others when they found them guilty, then, let's see, he arrested people and they were guilty, executed the guilty ones. Did the accuser go ever to court? Yes, except found guilty of killing many people. Does he anywhere say that he arrested people who didn't kill people? I don't know if he explicitly says that, but part of the evidence that everybody looked at was not just the asylum officer notes, but there is the objective country conditions evidence report from CIS, which basically corroborated that the groups that he worked with and admitted to working with were targeting political dissidents and people who were against the government. And that is also in the record. And the immigration judge focused on the fact that that version of events was corroborated most of what he told the asylum officer. To at least some extent, you're attributing to this police officer the evil motivations of those who said, arrest this man. Is that appropriate? That is, he's got an order to arrest somebody, and he doesn't know that the arrest is improperly motivated. Isn't that a problem here? Not exactly. Under Miranda-Alvarado, it requires personal involvement and purposeful assistance to the persecutor's motives. And here, without taking these political dissidents into custody and bringing them to where they are persecuted, they're free. They're roaming around Guatemala, and they're not in a position where this intelligence unit can exert control over them, persecute them, torture them, and possibly kill them. The premise of that is that he's arresting what you just described as political dissidents. If from his perspective, he's simply arresting people who've killed others without a political component, does that satisfy the test? Well, it's sort of unclear what he actually thinks. I mean, right off the top in the asylum officer interview, he asks him, have you ever persecuted others? And he says, yes, because of the type of work I did. So there's some sort of awareness of what he's doing. Well, I doubt that he's using the word or responding to a question persecuted in the same way that that word is used under the immigration laws. Yeah, I was a policeman. I mean, you know, policemen arrest people, and a layperson might think they were persecuting them. I'm sorry, Your Honor. I didn't understand. Policemen arrest people and use force against them, right? If you were a layperson, you might well think that you were persecuting them. But he knows he's bringing them to the specialized unit, and he knows that some of these people wound up summarily executed at the end of those. He does say that. He does maintain throughout that these were people who killed other people. He never says that he arrested people who were for simply political crimes. On 454, were you asked to arrest others who were against the government? Yes. Yes, but that's different. I mean, if you were – he was arrested people and they were against the government. That doesn't mean that he arrested them because they were against the government. Because he said – he went on and said when someone tried to obtain information from the government, what type of persons? Persons who have killed four or five people who are trying to erase info, so the information, so they will not be brought to justice. That's his ultimate explanation of these people who are against the government. But then the asylum officer asks, did you arrest people who were not supporters of the government?  Okay. I think it's possible he was doing both, given the notes and also given the objective information. The question is, did you arrest people who were not supporters of the government? Well, yes. These people who killed four or five people and who were trying to arrest – erase so they weren't being brought to justice were not supporters of the government. But does that make him culpable for arresting people for unpolitical opinion, knowingly so? I think that the government met the Prima Fasci burden, and then it shifts to Rodas Reyes, and we have nothing but his incredible later testimony to rebut that. And so in the end, he doesn't have to have enough evidence from which one could fairly – Well, perhaps there are two different readings of this asylum interview, given our conversation right now. To me and our position, he's admitting to arresting some people who have committed crimes but also targeting people who are against the government, who have not necessarily committed crimes. And then we have the background country conditions evidence that says that PN2 and the Sixth Motorized Corps were working together to make those types of arrests and that there was a secret intelligence apparatus in a hospital where people were brought and persecuted. We seem to be throwing a wide net of taint on people who participated in what I will assume is a repugnant arrest of somebody. And I'm a little bit – the driver of the vehicle, et cetera. Without an indication that the person doing it had any, I'll call it improper motivation, aren't we throwing the net of taint too wide? The case law in this area doesn't require a guilty conscience necessarily. Okay. Anything else? If there are no other questions. Thank you very much. Thank you. Extremely briefly. I think there clearly is a guilty scienter component because the persecution has to be on account of. So again, I think it's casting too wide a net in the sense that we're in an area of civil discord. In all the other case law, Miranda, the cases from the other circuit, Zia, the people that were picked up were picked up solely for political reasons. Here, clearly, these are criminals who may or may not have been political dissidents. And so I think we really don't have the nexus. And I would submit that. Could you make this argument in your opening brief? I – well, implicitly, sure. Because I would say that – Well, implicitly, you may not cut it. I mean, I – this is a new angle, and there may be some traction there, but I start flipping through the opening brief. I don't see it. I'm not sure it was ever made to the BIA or, for that matter, maybe not to the IJ in those terms. So that might help explain why the agency's decisions don't focus on the enumerated grounds. I don't think enumerated grounds was raised. Well, I think they focused more on the credibility, and so therefore, we didn't rebut the allegation. What did you focus on? Did you represent the – okay. What did counsel who represented Petitioner at that time focus on? I thought you did represent it, or at least your office did. Well, my office did. No, no, no. I mean, I wasn't – I didn't do the hearing. Your office did. Right, right. I mean, I wasn't present at the hearing. Well, he could have rehabilitated him better, yes. I mean, basically – I said – as I said right at the outset, as I read your brief, it had nothing to do with the substance of this at all. It was basically an argument that we should completely disregard or an assumption that we should completely disregard – excuse me – completely disregard the asylum officer notes and therefore find that there was no evidence. Well, because the argument was that – That's all you said. You didn't do any of this in terms of arguing if we assumed the asylum officer's notes, whether the standard was met. Well, the argument was that the asylum officer's notes did not show it, so therefore what they were really arguing was the collective culpability. I understood the argument to be that the – or the assumption to be, it wasn't even articulated, that the asylum officer notes were to be disregarded entirely because they were a hearsay. I mean, frankly, this note, this brief was unacceptable. It was an unacceptable brief. You know, and the question is, it didn't say anything. It was completely incoherent. But it certainly didn't say what you're saying now. I'm not sure that's 100 percent correct, but I appreciate that. I mean, certainly my argument was that this was under the – more the rubric of Vukorinovich because there wasn't enough in the asylum officer's notes, so they were saying since everyone – others did it in the police force, then he did it. And that's sort of the collective – that there was no individual responsibility. That was the thrust of my argument, where I was focusing more on Vukorinovich than Miranda Alvarado. Okay. Thank you very much. The case of Rodas Reyes v. Sessions is submitted. And we will go to Gal Dames v. Sessions.
judges: Berzon, Clifton, Garbis